UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KATHLEEN WHITE,
    Plaintiff,

v.                                       CIVIL ACTION NO. 10-10021-PBS

MICHAEL J. ASTRUE, COMMISSIONER
of the SOCIAL SECURITY
ADMINISTRATION,
    Defendant.

**MEMORANDUM AND ORDER**
February 23, 2010

Saris, U.S.D.J.

## I. INTRODUCTION

Plaintiff Kathleen White seeks to reverse the decision denying her claim for Supplemental Security Income benefits under 42 U.S.C. § 405(g) on the grounds that the Administrative Law Judge ("ALJ") failed to properly consider her migraine headaches and learning disability. Plaintiff's motion to reverse the decision is **DENIED**, and defendant's motion to affirm is **ALLOWED**.

## II. BACKGROUND

### A. Personal History

Plaintiff Kathleen White was born in 1966; graduated from high school in 1984; and was married in 1989. (Admin. Record ("A.R.") 29, 37, 40.) The relationship was violent, and Ms. White suffered both mental and verbal abuse. (Id. at 40.) In addition, her husband "kept [her] a prisoner in the house," and "wouldn't let [her] go outside." (Id. at 41.) Ms. White

1

divorced her husband, but as a result of the abuse, her son was taken into foster care. (Id. at 37.) She has had no additional contact with her son since that time. (Id. at 37.)

Ms. White has been unemployed for most of her adult life. (Id. at 29-31.) She was last employed roughly thirteen years ago, in 1997, when she worked as a counter-clerk at a Wendy's restaurant. (Id. at 29-30.) There, she rang up customers, made fries, and occasionally worked the grill. (Id. at 30.) After working for approximately nine months, Ms. White quit, mid-shift, due to an anxiety attack brought on by the overwhelming number of customers in the restaurant. (Id. at 31, 47.) Since that time, Ms. White has remained unemployed. (Id. at 31.)

Ms. White now resides with her boyfriend and their two children in Plymouth, Massachusetts.[1] (Id. at 44-45, 52.) She performs some of the household tasks like shopping. Some other household tasks, like paying the bills, cooking, and doing the laundry, prove too difficult for her and are completed by her boyfriend or her daughter. (Id. at 45-46.)

B. **Medical History and Evaluation by Experts**

   1. **Mental Health**

Ms. White suffers from a variety of mental disorders. Her struggle with mental illness began in her teens. At the age of

---

[1] The children are currently twelve and seven years old. (Id. at 133.)

2

sixteen, she was sent to Augusta Mental Health Hospital because she was "drinking alcohol," "hang[ing] around with the wrong crowd," and "prone to 'emotional outbursts and punching walls.'" (Id. at 39-40, 235.) According to Ms. White, however, her problems with mental illness began, in earnest, during and after her abusive relationship with her ex-husband. (Id. at 40-41.)

Ms. White currently suffers from anxiety and agoraphobia. (Id. at 46, 68, 236.) She is "afraid to go out in public," and her anxiety is often amplified in the presence of large crowds. (Id. at 43, 46.) Due to her anxiety, Ms. White suffers from panic attacks about four times per week. (Id. at 43.)

Ms. White also suffers from depression. (Id. at 40-41.) She no longer finds enjoyment in everyday activities, and can no longer socialize with anyone outside of her family. (Id. at 47-48.) Now, she can only bring herself to "stay in the house, sit down and watch TV." (Id. at 40.) She has difficulty sleeping, and is constantly tired. (Id. at 48.) In addition, Ms. White has been diagnosed with post-traumatic stress disorder as a result of her past abusive relationship. (Id. at 36, 41.)

To help with these problems, Ms. White is currently being treated at the South Bay Mental Health Center. (See, e.g., A.R. 41, 248.) There, she receives counseling services and prescription medication, and since 2002 she has been taking twenty milligrams of Paxil daily. (Id. 41-42.) According to Ms. White, the Paxil alleviates some of her anxiety, but it does not

3

help her depression. (Id.) Ms. White's doctors seem to be in agreement that she suffers from anxiety related disorders. (Id. at 345-46.)

### 2. Migraine Headaches

Ms. White also suffers from migraine headaches. Plaintiff is prescribed 325 milligrams per day of IC Butal-Apap to treat her migraine headaches by Dr. Raafat Hanna. (Id. at 43, 210.) In addition, a client intake form filled out by Diana Barbosa from the South Bay Mental Health Center lists "headaches" as a symptom that the patient has "experienced due to [her] substance abuse." (Id. at 254.) Although Ms. White does not currently abuse alcohol, she did abuse alcohol in the past. (Id. at 40, 254.)

Ms. White discussed her migraine headaches at the hearing with the Administrative Law Judge ("ALJ") as follows:

> Q: How often do you experience the migraine headaches?
> A: I get a lot of those, maybe like during the week and stuff, maybe about five times a week.
> Q: And how long do they last?
> A: Some -- without the medicine they last all day. Now I had one this morning. I still have a little bit of pain, but it lasts all day and sometimes they recur and they come back.
> Q: On a scale of one to ten, one being the lest [sic] painful 10, 10 being the most painful, how would you describe the average migraine headache that you suffer?
> A: About a nine.

(Id. at 43.)

### 3. Shoulder Pain

On April 1, 2009, Ms. White fell down and injured herself. (Id. at 32.) After the fall, she suffered from neck pain and

4

left shoulder pain. (Id. at 32-33.) She later went to an orthopedic doctor, who took X-rays of her injuries. (Id. at 35.) The doctor diagnosed her with a rotator cuff injury to the left shoulder. (Id. at 32.) She was told to seek physical therapy for this injury, but she had not yet done so at the date of her hearing. (Id. at 33.)

#### 4. Learning Disability

Ms. White also claims that she suffers from a learning disability. According to her own account, during grade school, Ms. White had trouble with reading, writing, and math. (Id. at 38.) She claims that she attended special education from the first grade on, and that her classes were part of an individualized education plan. (Id.) On her disability report, Ms. White states that she attended a Department of Education Chapter 766 program at North Quincy High School from 1982 to 1984. (Id. at 148.)

#### 5. Hearing Loss

On her application for disability benefits, Ms. White cited "hearing loss" as a problem. (Id. at 143.) This limitation, however, was not brought up at the hearing with the Commissioner on June 15, 2001, or in any of her other patient files.

### C. Procedural History

Ms. White applied for Social Security Disability Insurance ("SSDI") benefits on July 17, 2007. (Id. at 132.) She alleged

5

that her disability began on January 2, 1990 and asserted that her panic disorder, severe anxiety, and loss of hearing in her left ear "limit[ed] her ability to work." (Id. at 132, 143.)

As part of the application process, Ms. White was examined by the Commissioner's psychologist, Dr. Edward M. Powers, Ph.D. Dr. Powers found as follows:

> [Ms. White] described a medical history notable for migraine headaches. Ms. White has recently changed her primary care physician who is said to be further investigating the basis of the headaches prior to prescribing medication for them. . . .
>
> Thought appeared normal in process and content with no evidence of psychosis or disturbances in perception. Sensorium and cognition appeared to be intact. [She] was oriented in all spheres and memory impairment (recent) was evident on this occasion. Attention was sustained but concentration proved impaired. [Ms. White's] fund of personal and general information appeared limited and Ms. White demonstrated no capacity for abstract thought. There was no evidence of impulsivity. Judgment and social reasoning appeared within normal limits. A formal intellectual evaluation was not performed, but interpersonal interaction and reported history suggests [intellectual abilities] within a borderline range. Based on [her] overall presentation, she is considered to be a credible informant concerning her history and current circumstances.

(Id. at 234, 236.) Dr. Powers also found that plaintiff suffered from anxiety and was in need of mental health counseling. (Id. at 236.) He found that her symptoms were "consistent with a diagnosis of panic disorder having agoraphobic features." (Id.)

Her application was denied by the Social Security Administration on January 30, 2008. (Id. at 89.) She then filed a Request for Review by a Federal Reviewing Official, and this

6

request was denied. (Id. at 83, 103-04.) She filed a Request for a Hearing before an Administrative Law Judge, and the hearing was held in Boston, Massachusetts in July of 2009. (Id. at 5-15, 100.)

On July 31, 2009, ALJ Stephen C. Fulton rendered a decision denying disability benefits to the plaintiff. (Id. at 8.) The decision was selected for review, but the Review Board did not disturb the decision. (Id. at 1-3.) After Ms. White had exhausted all administrative remedies, she commenced this civil action pursuant to 42 U.S.C. § 405(g).

### III. STANDARD

#### A. Disability Determination Process

An individual may be entitled to Social Security disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment can only be disabling if it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner has developed a five-step sequential evaluation process to determine whether a person is disabled. 20

C.F.R. § 404.1520(a)(4); see also Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). "Step one determines whether the plaintiff is engaged in 'substantial gainful activity.' If he is, disability benefits are denied. If he is not, the decisionmaker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (internal citations omitted). To establish a severe impairment the claimant must "show that he has an 'impairment or combination of impairments which significantly limits . . . the abilities and aptitudes necessary to do most jobs.'" Id. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).

If the claimant has a severe impairment, the third step is to determine "whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Id. at 141 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). If so, the claimant is conclusively presumed to be disabled. Id. If not, the fourth step evaluates whether the impairment prevents the claimant from performing his past work. Id. The claimant is not disabled if he is able to perform his past work. Id. (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). If he cannot perform his past work, the burden shifts to the Commissioner on the fifth step to prove that the claimant "is able to perform other work in the national

8

economy in view of his age, education, and work experience." Id. at 142, 146 n.5. During steps one, two, and four, the burden of proof is on the claimant. Id. at 146, n.5. At the fifth step, the burden is on the Commissioner. Id. at 142. If the Commissioner fails to meet this burden, the claimant is entitled to benefits. Id.

B. **Opinion of the Administrative Law Judge**

On July 31, 2009, ALJ Stephen C. Fulton rendered a decision denying disability benefits to the plaintiff. (A.R. 8.) In the decision, Judge Fulton undertook the standard five-step analysis for disability determinations, detailed below. (Id. at 8-15.) As plaintiff had not participated in any "substantial gainful activity" since the date of her application, the analysis proceeded to step two. (Id. at 10.)

At step two, the ALJ found that plaintiff had "the severe impairments of dysthymic disorder, panic disorder, and post traumatic stress disorder by history." (Id.) In the explanation for this finding, the ALJ noted "the objectively documented clinical signs and findings and the treating physician notes and opinions described in the medical evidence of record." (Id.) The ALJ found that the impairment resulted in "more than minimal reduction in the ability to perform work related activities" and thus constituted a "medically determinable severe impairment." (Id.)

9

The ALJ also discussed plaintiff's other asserted impairments. (Id.) The ALJ found that the "medical evidence of record document[ed] migraine headaches," but that this ailment did not "cause more than a minimal limitation in the claimant's ability to perform basic work activities." (Id.) Thus, the ALJ declined to include the migraines in the remaining disability analysis, as the they were "not severe." (Id.)

In addition, the ALJ found that although Ms. White alleged a learning disability "there [was] no medical evidence of record that [the] alleged condition [was] medically determinable." (Id.) Thus, the ALJ refused to include the learning disability into the remaining steps of the analysis. (Id.)

Addressing the "dysthymic disorder, panic disorder, and post traumatic stress disorder," the ALJ found that the conditions were not severe enough to meet a "per se" disability listed in the SSA regulations. (Id. at 11.) And "[a]fter careful consideration of the entire record," the ALJ found that plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels except that she [could] understand and remember only simple instructions, [could] concentrate for only 2 hours over an 8 hour day on only simple tasks, [could] interact appropriately with co-workers and supervisors but should avoid frequent contact with the general public in a work setting and she [could] adapt to changes in the work setting." (Id. at

10

12.) Given these constraints, the ALJ found that while plaintiff was "unable to perform any past relevant work," she could perform "jobs that exist in significant numbers in the national economy," as detailed by the vocational expert, such as "small parts assembly" or "bench assembly." (Id. at 13-14.)

C. **Standard of Review**

In reviewing disability and disability insurance decisions made by the Commissioner, this Court does not make de novo determinations. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). Rather, this Court "must affirm the [ALJ's] findings if they are supported by substantial evidence." Cashman v. Shalala, 817 F. Supp. 217, 220 (D. Mass. 1993); see also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (stating that the ALJ's determination must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence means such relevant evidence as a "reasonable mind, reviewing the evidence in the record as a whole, could accept . . . as adequate to support [the ALJ's] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.

11

1991) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). In reviewing the record for substantial evidence, the Court is "to keep in mind that '[i]ssues of credibility and the drawing of permissible inferences from evidentiary facts are the prime responsibility of the [ALJ].'" Rodriquez, 647 F.2d at 222 (quoting Rodriquez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)). When a conflict exists in the record, the ALJ bears the duty to weigh the evidence and resolve material conflicts in testimony. See Richardson, 402 U.S. at 399; Irlanda Ortiz, 955 F.2d at 769. An ALJ's findings of fact, however, are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

In addition to considering whether the ALJ's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. "Failure of the [ALJ] to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with the sufficient basis to determine that the [ALJ] applied the correct legal standards are grounds for reversal." Weiler v. Shalala, 922 F. Supp. 689, 694 (D. Mass. 1996) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982)).

### IV. DISCUSSION

A.  **Migraines**

Plaintiff argues that the ALJ ignored her diagnosis of migraine headaches in violation of regulations requiring the ALJ to consider all of the claimant's symptoms that are supported by "objective medical evidence." 20 C.F.R. §§ 404.1520, 404.1529.

Contrary to plaintiff's argument, the ALJ did consider the plaintiff's migraine headaches in step two of the analysis. (A.R. 10.) In step two, the ALJ must determine whether the plaintiff suffers from a "severe impairment" that "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." Bowen, 482 U.S. at 141-42. In his decision, the ALJ found that "[a]lthough the medical evidence of record document[ed] migraine headaches . . . [this] medically determinable impairment[] [did] not cause more than minimal limitation in the claimant's ability to perform basic work activities." (A.R. 10.) The ALJ thus found that the impairment was not "severe," as required by step two. (Id.)

The plaintiff carries the burden at step two to prove that she suffers from a "severe impairment" that "significantly limits" her ability to perform basic work activities. Bowen, 482 U.S. at 141-42. To make this showing, the plaintiff must demonstrate, through "objective medical evidence," that her condition meets the above standard of severity. 20 C.F.R. §§ 404.1520, 404.1529.

Plaintiff's objective support for her migraine headaches is quite limited. She presents a client intake form, completed at a mental health facility in 2007, that lists "headaches" as a symptom, and a notation in 2009 from her treating physician that "3-4 day migraines" were part of her then-current illness. (A.R. 254, 313-14.) Her physician also prescribed her medication for these migraines. (Id. at 70, 210.) A mere diagnosis of a condition "says nothing about the severity of the condition." Higgs v. Bown, 880 F.2d 860, 863 (6th Cir. 1988). The primary evidence speaking to the severity of plaintiff's migraines is her own testimony that her migraines would occur about five times a week and would average a "nine" in severity on a scale of one to ten. During the hearing, Ms. White stated that <u>without taking medication</u>, her headaches would "last all day," thus implying that the medication reduced the severity of her migraines. (A.R. 43 (emphasis added).) Ms. White was even suffering from a migraine during the hearing, allowing the ALJ to see, in person, how a migraine would impact Ms. White's ability to work. (Id.) She explained that during the hearing she was only experiencing a "little bit of pain" from a migraine that began in morning. (Id.) Despite the migraine, she was able to successfully complete the hearing with the ALJ. (Id.)

As such, the ALJ's determination that Ms. White's migraines were not "severe" after she took medication is supported by her

14

own statements at the hearing, and are not contradicted by any of the medical evidence in the record. It is the ALJ's "prime responsibility" to weigh the evidence, and his determinations of fact are reviewed deferentially. Rodriquez, 349 F.2d at 496. There is substantial evidence to support his determinations and thus, his decision must stand.

B. **Learning Disability**

Plaintiff challenges the ALJ's determination that there was "no medical evidence" that plaintiff's learning disability was "medically determinable." (Pl.'s Br. 12.) Plaintiff contends that this determination was contrary to the evidence, including the testimony of the ALJ's own medical expert - Dr. Edward M. Powers, Ph.D. (Id.)

In order to constitute a "medically determinable" impairment under the regulations, the impairment must be medically verifiable and established by proper diagnostic techniques. 20 C.F.R. § 416.908. In addition, the impairment must be objectively proven by signs, symptoms, and laboratory findings, and not merely by a claimant's statements about her symptoms. Id.

As defendant notes, Dr. Powers did not diagnose plaintiff with any learning disability, but he did find that Ms. White's informational knowledge "appeared limited," and that she "demonstrated no capacity for abstract thought;" but he also

15

found that her "process and content" were normal, her "cognition appeared to be intact," her "[a]ttention was sustained," and that her "[j]udgment and social reasoning appeared within normal limits." (A.R. 236.)

In his own report, Dr. Powers reminded the ALJ that he had not performed a "formal intellectual evaluation." (Id.) And while he noted that plaintiff's "suggested" intellectual endowment was within a "borderline range," he based this on her "overall presentation" and her "reported history." (Id.) Dr. Powers' findings were heavily based on plaintiff's own statements, and none of his statements can be viewed as a diagnosis.

Plaintiff also brings the Court's attention to the South Bay Mental Health intake form. (Pl.'s Br. 13.) The form marked Ms. White's intelligence as "below average" and indicated that she had speech defects. (A.R. 257.) However, the same clinician also noted that plaintiff's thought processes and content were "normal." (Id.) The clinician did not diagnose a learning disability.

Plaintiff points out she attended special education classes during grade school. (Pl.'s Br. 13.) However, Ms. White never claims that she was diagnosed with a medically recognized learning disability at any time during her life. She only claims that she was placed in special education because she had "trouble

16

reading, writing and doing [mathematics]." (A.R. 38.) This is consistent with a person who has borderline intelligence. There is no medical evidence in the record indicating that Ms. White has a learning disability. As such, the ALJ's finding was supported by "substantial evidence," and is affirmed. See Cashman, 871 F. Supp. at 220.

## V. ORDER

Plaintiff's motion for reversal of the ALJ's decision is **DENIED**. Defendant's motion to affirm the decision of the ALJ is **ALLOWED**.

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge